# Case No. 2,751.

## The CITY OF HARTFORD.

### [10 Ben. 150.] [1]

District Court, E. D. New York. Oct., 1878.

#### RATE OF WHARFAGE AT BULKHEAD—COSTS.

A steamboat, 272 feet long, occupied a berth at a bulkhead in the city of New York for 28 days. The bulkhead was owned by three parties. B. owned one hundred feet of it, all of which was occupied by the steamboat or by lines which ran from her bow forward to a spile at the corner of the bulkhead. F. owned the hundred feet next, all of which was occupied, and K. owned one hundred and fifty feet next, seventy-five feet of which was occupied. The rate of wharfage which, by the statute of the state of New York, the steamboat would be called on to pay for a single berth was $9.50 a day. B. filed a libel, claiming to recover of her for wharfage $9.50 a day. The owners of the steamboat claimed that he was only entitled to his proportionate share of the $9.50 a day and tendered and paid into court $89.22: *Held*, that the libellant was not entitled to recover $9.50 a day, but only his proportionate share of that sum, viz., 100-275 of it, and without costs.

[Cited in The William H. Brinsfield, 39 Fed. 219.]

In admiralty.

Gale & Chalmers, for libellant.

D. & T. McMahon, for claimant.

BENEDICT, District Judge. This is an action to recover wharfage. The material facts are not in dispute and are as follows: For a period of twenty-eight days in November, 1877, the steamboat City of Hartford occupied a berth at the bulkhead between Bank and Bethune streets, in the North river, while undergoing some repairs.

The rate of wharfage to be paid by vessels using wharves and piers in the cities of New York and Brooklyn, is regulated by a statute of the state of New York, which provides: "It shall be lawful to charge and receive, within the cities of New York and Brooklyn and Long Island City, wharfage and dockage at the following rates, namely: From every vessel that uses or makes fast to any pier, wharf, or bulkhead, within said cities, or makes fast to any vessel lying at such pier, wharf or bulkhead, or to any other vessel lying outside of such vessel, for every day or part of a day, as follows: From every vessel of 200 tons burden and under, two cents

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

per ton, and for every vessel over 200 tons burden, two cents per ton for each of the first 200 tons and one-half of one cent per ton for every additional ton, except canal-boats, etc., * * * but every other vessel making fast to a vessel lying at any pier, wharf or bulkhead, within said cities, or to another vessel lying outside of such vessel, or at anchor within any slip or basin when not receiving or discharging cargo or ballast, one-half the first above rates; and from every vessel or floating structure, other than those above named or used for transportation of freight or passengers, double the first above rates, except that floating grain elevators shall pay one-half the first above rates; and every vessel that shall leave a pier, wharf, bulkhead, slip or basin without first paying the wharfage or dockage due thereon, after being demanded of the owner, consignee, or person in charge of the vessel, shall be liable to pay double the rates established by this act." At the rate fixed by this statute $9.50 per day would be the sum the City of Hartford would be liable to pay for an inside berth.

There were three different persons each of whom owned a portion of the bulkhead at which the steamboat lay. The length of the water-front thus occupied which belonged to Brainard the libellant was 100 feet. The whole of this portion of the bulkhead may properly be considered as having been used by the steamboat, the lines from her bow extending to a spile at the corner of the libellant's portion, for although there was a small space between the bow of the steamboat and the adjoining pier, that space was not only covered by the lines so as to prevent its use by any other vessel, but was also too small to be used by any other craft.

Next south of the libellant's portion of the bulkhead for a distance of 100 feet, one Fagan owned the bulkhead. The steamboat was 272 feet long, and, of course, she covered all of Fagan's portion, so as to prevent its being used as a berth for any other vessel. Lines ran from the steamboat to Fagan's portion as well as to the libellant's portion. Next south of Fagan's portion for the space of 150 feet, the bulkhead was owned by one Keenan. Keenan has been paid for the use of 75 feet of his bulkhead by this boat, and the evidence shows that, at least for that distance, the bulkhead of Keenan was substantially used. To this part as well as to the libellant's part, ingress and egress was had by those on the boat, and lines ran from the boat to spiles thereon.

Upon these facts the libellant claims to be entitled to $9.50 per day for the use of his portion of the bulkhead; while the claimant insists that $9.50 per day is the whole sum chargeable upon the boat for the whole berth, and that the libellant is entitled to a part of that sum proportionate to the extent of his bulkhead which was opposite to the hull of the steamboat as she lay in the berth.

I cannot agree with either of these positions. As to the claim of the libellant to be paid $9.50 per day for use of his bulkhead, I have no difficulty. It is impossible to suppose that the statute intended to allow every owner of a part of a bulkhead to charge for the use of his water-front the full amount of wharfage prescribed by the statute for a full berth, without any regard to the amount of water-front used. Such a construction of the statute would compel a vessel to pay full wharfage to several different persons whenever the frontage used belonged to different persons; and this boat would be compelled in this instance to pay three wharfages, that is $28.50 per day, and if the owners of this bulkhead had happened to number thirty, instead of three, according to such an understanding of the law the liability would be $285.00 per day. Such can not have been the intention. The meaning of the statute is that a boat shall pay the amount provided by the act and no more for her berth. This charge for a berth being required to be calculated by the tonnage, of course the amount of wharfage increases with the size of the boat; but it is a single charge for a single berth. It follows that when the berth used is owned by different persons, the statutory charge must be justly apportioned among the several owners. The claim made by the libellant to be entitled to $9.50 for each day this boat lay at his pier is therefore rejected.

The remaining question is how to apportion the wharfage chargeable by the statute for the berth among the various owners. The claimant's view is that only that part of the bulkhead against which the boat actually lay was used by the boat, and in accordance with this view he has tendered and paid into court the sum of $89.22. But upon the evidence the boat substantially appropriated to her own use for her berth at this bulkhead an extent of water-front exceeding her own length by some few feet. She required for her berth, and substantially appropriated, 275 feet of the bulkhead, of which 100 feet belonged to the libellant. A just division of the legal wharfage allowed for the whole berth would therefore be to give to the libellant 100-275 of the gross sum. This would be equity.

According to this mode of division the libellant is entitled to the sum of $95.66. The claimant has tendered only the sum of $89.22, and the libellant must, therefore, have a decree for the sum of $6.44. But I give no costs, because the question is novel, and the evidence shows a desire on the part of the claimant to pay without suit all that was legally chargeable.

It has been contended that the decision in the case of The Virginia Rulon [Case No. 16,974] is adverse to the foregoing conclusion and in favor of the claim made by the libellant. But the distinction between the two cases is this: The Virginia Rulon occupied and used two berths, one at the pier and

one on the bulkhead, and discharged cargo on both the pier and the bulkhead at the same time. In such a case—and others might be imagined—the vessel is considered as using two berths and for that reason chargeable with lawful wharfage for each. The present is a different case, because here the vessel occupied only the space necessary to give her a berth, and that space was along the water-front of a continuous bulkhead. She used no more than was necessary, if she was to have a berth at all, and therefore occupied but a single berth.

The view I have taken of this case disposes of the claim for double wharfage based on the provision of the statute, that when the vessel leaves the wharf without paying her wharfage after demand made, she is liable to double wharfage; because the only demand ever made by the libellant was at the rate of $9.50 per day. As he was only entitled to $3.07 per day, such a demand was properly refused and does not entitle the wharfinger to double wharfage.

Let a decree be entered in accordance with this opinion.